UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA MENDOZA,<br><br>  Plaintiff,<br><br>  v.<br><br>MONSANTO COMPANY,<br><br>  Defendant. | No. 1:16-cv-00406-DAD-SMS<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. No. 73) |

This action is proceeding on a first amended complaint ("FAC") filed October 20, 2015. (Doc. No. 24.) The FAC states five causes of action related to plaintiff's alleged development of non-Hodgkin lymphoma in October 2013 as a result of her use of defendant's Roundup product containing the active ingredient glyphosate between the years 2004 and 2012: (1) strict liability-based design defect; (2) strict liability-based failure to warn; (3) negligence; (4) breach of express warranty; and (5) breach of implied warranty. (*Id.* at 31–57.)

Defendant moved to dismiss the complaint on two grounds. First, defendant argues any of plaintiff's causes of action which are based on a failure to warn are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). (*See* Doc. No. 73-1 at 5–10.) Second, defendant asserts any of plaintiff's causes of action based on an alleged design defect are barred by comments j and k to the Restatement (Second) of Torts § 402A. (Doc. No. 73-1 at 10–14.) Plaintiff filed an opposition to the motion on May 3, 2016, and defendant filed a reply on June 14,

2016. (Doc. Nos. 81, 90.) On June 21, 2016, a hearing on the motion was held. Attorneys Christopher Dalbey, Robin Greenwald, Hunter Lundy, Kristie Hightower, Maja Lukic, and Matthew Lundy appeared on behalf of plaintiff, and attorneys Martin C. Calhoun and Eric Lasker appeared on behalf of defendant. After considering the parties arguments, for the reasons discussed below, the court will deny defendant's motion to dismiss.

## I. Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). In determining whether dismissal is appropriate under Rule 12(b)(6), the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). In ruling on such a motion, the court is permitted to consider material which is properly submitted as part of the complaint, documents that are not physically attached to the complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). The district court may consider questions of preemption in a Rule 12(b)(6) motion. *See, e.g.*, *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003–04 (9th Cir. 2008); *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1203 (9th Cir. 2002).

## II. Analysis

In large part defendant's arguments, both in the papers and at oral argument, repeats those they advanced in two other cases pending before other District Courts in California: *Hardeman v. Monsanto Co.*, No. 16-cv-00525 VC, 2016 WL 1749680 (N.D. Cal. Apr. 8, 2016); and *Giglio v. Monsanto Co.*, No. 15cv2279 BTM(NLS), 2016 WL 1722859 (S.D. Cal. Apr. 29, 2016). In both of those cases, defendant's motions to dismiss were denied. The undersigned agrees with the reasoning of those prior orders.

*1. FIFRA Preemption*

FIFRA prohibits the sale or distribution of a pesticide that is misbranded. 7 U.S.C. § 136j(a)(1)(E). A pesticide is misbranded under FIFRA if the label does not contain directions

1  which "if complied with . . . are adequate to protect health," 7 U.S.C. § 136(q)(1)(F), or if "the
2  label does not contain a warning or caution statement which . . . if complied with . . . is adequate
3  to protect health," 7 U.S.C. § 136(q)(1)(G).  FIFRA requires all pesticides to be registered with
4  the Environmental Protection Agency ("EPA") prior to sale or distribution.  *See* 7 U.S.C.
5  §§ 136a(a), 136(b).  Under FIFRA, while the "registration of a pesticide shall be *prima facie*
6  evidence that the pesticide, its labeling and packaging comply with the *registration provisions*" of
7  FIFRA, "[i]n no event shall registration of [the pesticide] be construed as a defense for the
8  commission of any offense under this subchapter."  7 U.S.C. § 136a(f)(2) (emphasis added).
9  Therefore, a properly registered label may still be misbranded.  *See Giglio*, 2016 WL 1722859, at
10 *2 ("It is unlawful under the statute to sell a pesticide that is registered but misbranded.");
11 *Hardeman*, 2016 WL 1749680, at *1–2 ("[T]he mere fact that the EPA has approved a product
12 label does not prevent a jury from finding that that same label violates FIFRA.").

13         FIFRA contains an express preemption provision which states:

14             (a) In general

15             A State may regulate the sale or use of any federally registered
               pesticide or device in the State, but only if and to the extent the
16             regulation does not permit any sale or use prohibited by this
               subchapter.
17
               (b) Uniformity
18
               *Such State shall not impose or continue in effect any requirements*
19             *for labeling or packaging in addition to or different* from those
               required under this subchapter.
20

21 7 U.S.C. § 136v (emphasis added).  However, not all limitations the states place on pesticides run
22 afoul of FIFRA's express preemption provision.  In *Bates v. Dow Agrosciences LLC*, 544 U.S.
23 431 (2005), the Supreme Court set out the following two-part test for determining whether a state
24 rule is preempted under § 136v(b):  (1) it must be a requirement "for labeling or packaging", and
25 (2) it must impose a labeling or packaging requirement that is "in addition or different from those
26 required under this subchapter."  *Id*. at 444 (emphasis omitted).  Even when the state rule does
27 impose a requirement for labeling or packaging, it is not preempted if the state rule is "fully
28 consistent with federal requirements."  *Id*. at 452.

1    For purposes of § 136v(b)'s express preemption provision, "the term 'requirement' reaches beyond positive enactments, such as statutes and regulations, to embrace common-law duties." *Bates*, 554 U.S. at 443 (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 521 (1992)). A plaintiff's "fraud and negligent-failure-to-warn claims are premised on common-law rules that qualify as 'requirements for labeling or packaging,'" and thus come within the ambit of the preemption provision. *Id.* at 446. The question before this court, therefore, is whether any requirements to be imposed by state rules are "in addition to or different from" those required by FIFRA.

"[S]tate law need not explicitly incorporate FIFRA's standards as an element of a cause of action in order to survive preemption," and a state law claim will survive as long as there is a substantial, not strict, parallel between it and the requirements of FIFRA. *Id*. at 447, 453–54. "To the extent state law might be construed more broadly than federal law, the solution is not to prohibit state law suits altogether, but to 'instruct the jury on the relevant [federal] standards, as well as any regulations that add content to those standards.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 758 (9th Cir. 2015) (quoting *Bates*, 544 U.S. at 454).

The definition of misbranding under FIFRA is quite expansive. *See* 7 U.S.C. § 136(q)(1)(F)–(G) (misbranding means, in pertinent part, that the label does not contain sufficient directions, warnings, or cautionary statements to be "adequate to protect health"). Neither party points the court to properly promulgated rules or regulations from EPA further specifying what is meant by the term "misbranded." Rather, defendant asks the court to take judicial notice of six documents: a fact sheet issued by the EPA in September 1993 concerning its decision to re-register glyphosate; four exhibits which were published in the Federal Register, dated September 27, 2002, November 10, 2004, December 3, 2008, and May 1, 2013, each of which reflect the EPA's findings regarding Roundup's carcinogenicity pursuant to its authority under a separate statute; and a statement of a deputy director of the EPA's Office of Pesticide Programs at a hearing before the Senate Committee of Agriculture, Nutrition and Forestry. Judicial notice of these documents is generally appropriate. *See* Fed. R. Evid. 201; *see also* 44 U.S.C. § 1507; *Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, Case. No. 14-cv-

4

1   02006-JST, 2015 WL 510919, at *3 (N.D. Cal. Feb. 5, 2015) ("Documents available through
2   government agency websites are often considered appropriate for judicial notice as documents in
3   the public record not reasonably subject to dispute."). However, in the undersigned's view the
4   documents do not establish what defendant claims they do.

5   At the heart of what defendant wishes this court to judicially notice is a fact which, if
6   proven, would be dispositive of this action: Roundup is not carcinogenic. Most likely because
7   that is clearly not a fact subject to judicial notice, defendant instead attempts to have the court
8   judicially notice something else: that *EPA has determined* Roundup is not carcinogenic and
9   therefore the failure to include a warning label cannot constitute misbranding under FIFRA. If
10  that were the case, any state law tort claim for failure to warn of the carcinogenic nature of
11  Roundup would, in effect, impose an additional requirement not imposed by FIFRA. According
12  to defendant's argument, any such claim would therefore be preempted so long as the EPA's
13  decision was not arbitrary and capricious. *See Hardeman*, 2016 WL 1749680, at *2 ("Of course,
14  if the EPA's approval of Roundup's label had the force of law, it would preempt conflicting state-
15  law enforcement of FIFRA."); *see also Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S.
16  359, 364–65 (1998) (Courts must defer to requirements imposed by the NLRB as long as they are
17  rationale and consistent with the applicable statute and the Board's explication is not inadequate,
18  irrational or arbitrary).

19  However, none of the documents replied upon by defendant establishes that Roundup is
20  not carcinogenic or that Roundup is not misbranded under FIFRA despite its failure to include
21  warnings about carcinogenicity. The first document relied upon by defendants in this regard is a
22  fact sheet promulgated by the EPA in September 1993 as part of its reregistration process for
23  glyphosate. It is unclear whether this fact sheet has the force and effect of law, which is
24  necessary for it to have any preemptive quality. *See Chrysler Corp. v. Brown*, 441 U.S. 281,
25  301–02 (1979) (describing substantive and procedural requirements of an agency action necessary
26  for a regulation to have the "force and effect of law"). The document itself announces an
27  anticipated reregistration and solicits comments on the planned registration within sixty days.
28  However, in order to have the force and effect of law, an agency's action must be final. *See Ass'n*

*of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 713 (D.C. Cir. 2015). This document clearly does not reflect a final decision. In addition, the document was filed in September 1993 and predates the exposure alleged in this action by more than a decade. Under FIFRA, manufacturers have a "continuing obligation to adhere to FIFRA's labeling requirement," and a prior registration is only *prima facie* evidence of compliance with the registration provision which does not constitute a defense to any offense—such as misbranding—prohibited by the statute. *Bates*, 544 U.S. at 438. *See also* 7 U.S.C. § 136a(f)(2). As such, plaintiff's challenge in this case can be construed, as the complaint was in *Hardeman*, as "implying that the EPA failed to enforce FIFRA correctly when it approved the label." 2016 WL 1749680, at *2.

The second, third, fourth, and fifth documents which defendant asks the court to take judicial notice of are all regulations promulgated by EPA under the Food, Drug, and Cosmetic Act ("FDCA"), not FIFRA. They are, therefore, simply not relevant to the question of whether Roundup is misbranded under FIFRA. *Hardeman,* 2016 WL 1749680, at *2 ("FDCA regulations don't 'give content to FIFRA's misbranding standards,' [citation omitted] so they don't affect the extent to which FIFRA preempts state law."); *see also United States v. Mead Corp.*, 533 U.S. 218, 227–34 (2001). The EPA's regulations under the FDCA would, under appropriate circumstances, require deference from this court concerning the interpretations of various statutory provisions *under the FDCA*. As noted, regulations under the FDCA do not speak to requirements under FIFRA, unless there is some specific link between the two statutes. At oral argument, defense counsel claimed EPA's regulations under FDCA are expressly incorporated into FIFRA by force of 7 U.S.C. § 136(q)(1)(F) and 40 C.F.R. § 152.112(f). However, neither of these subsections references the FDCA.[1] While 40 C.F.R. § 152.112(g) references the FDCA, it does so only in stating the EPA will not approve certain pesticide labeling for use on food, animal

---

[1] Title 7 U.S.C. § 136(q)(1)(F) also requires compliance with 7 U.S.C. § 136a(d), another section of FIFRA which governs classifications of pesticide. Title 40 C.F.R. § 152.112 states the EPA will only approve applications for registration if it determines the product is not misbranded as that term is defined in 7 U.S.C. § 136(q) and 40 C.F.R. §§ 156 *et seq.*, 157 *et seq.*, both of which are promulgated under the authority granted by FIFRA. Therefore, neither the statute nor the regulation cited by defense counsel support defendant's argument that the court should defer to rulemakings under the FDCA in interpreting FIFRA.

feed, or crops unless it also complies with the residue testing regulations EPA requires under the FDCA. 40 C.F.R. § 152.112(g). At most, therefore, these documents *might* establish that Roundup/glyphosate does not violate the residue testing requirements EPA has promulgated under the FDCA. Whether Roundup meets the FDCA's residue testing requirements does not, however, answer the question of whether Roundup/glyphosate is misbranded under FIFRA, since this would only be one of many ways in which a pesticide *could* be misbranded. *Compare* 7 U.S.C. § 136(q)(1)(F) ("A pesticide is misbranded if . . . the labeling accompanying it does not contain directions for use which are . . . adequate to protect health") *with* 40 C.F.R. § 152.112(g) ("EPA will approve an application . . . only if . . . all necessary tolerances, exemptions . . . and food additive regulations have been issued.")[2] Further, as plaintiff's counsel clarified at the hearing on the pending motion to dismiss, the complaint in this action does not allege plaintiff contracted non-Hodgkin lymphoma from ingesting Roundup on food, but rather from spraying it around her home between at least 2004 and 2012. (*See* Doc. No. 29 at ¶ 71.) Therefore, the documents relied upon by defendant are not pertinent to their preemption argument.

The sixth document which is the subject of defendant's request for judicial notice is a statement a deputy director of EPA's Office of Pesticide Programs made to the Senate Committee on Agriculture, Nutrition, & Forestry. (Doc. No. 74 at 57.) This statement does not have the force of law, and offers neither preemptive nor persuasive force. *See Perez v. Mortg. Bankers Ass'n*, ___U.S.___, ___, 135 S. Ct. 1199, 1223–24 (2015) ("It is the text of the regulations that have the force and effect of law, not the agency's intent."); *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 830 (9th Cir. 2012) ("Without a basis in agency regulations or other binding agency interpretations, there is usually no justification for attributing to an agency litigating

---

[2] At the hearing on the pending motion defense counsel essentially argued that because the EPA has determined under the FDCA that Roundup isn't carcinogenic and that FDCA determination is incorporated into the EPA's misbranding determination under FIFRA, when the EPA approved the label under FIFRA it was in effect determining Roundup was not carcinogenic. However, the statutes and regulations defense counsel points to in this regard provide only that if a pesticide fails to meet the residue test under the FDCA, it will not be approved under FIFRA. While one of the ways a pesticide would be misbranded under FIFRA is if it fails to meet the FDCA residue tests, that is not the only basis upon which it could be found to be misbranded.

position 'the force of law,' essential to *Chevron* deference.") (citations omitted); *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1020–22 (D.C. Cir. 2000) (recognizing various ways an agency decision can have binding effects).

In short, nothing presented by defendant in support of the pending motion to dismiss persuades this court that the failure to warn claims alleged by plaintiff in this case are subject to dismissal on preemption grounds under FIFRA. Defendant has not demonstrated plaintiff's state law claims, if successful, will necessarily impose any additional requirements beyond FIFRA's requirement that the product not be misbranded. Defendant also has not established that the EPA has determined Roundup is not misbranded under FIFRA. In any event, FIFRA itself does not deem a registration conclusive as to whether a pesticide is misbranded. *See* 7 U.S.C. § 136a(f)(2).[3] Accordingly, defendant's motion to dismiss on preemption grounds will be denied.

   2.   *Comments j and k of the Restatement (Second) of Torts § 402*

Defendant's second argument is that plaintiff's design defect claims are barred by comments j and k to § 402A of the Restatement (Second) of Torts. (Doc. No. 73-1 at 10–15.)

Section 402A of the Restatement (Second) of Torts states:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>    (a) the seller is engaged in the business of selling such a product, and
>
>    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

---

[3] Defendant's citation to the decision in *Reckitt Benckiser, Inc. v. Jackson*, 762 F. Supp. 2d 34 (D.D.C. 2011) in its reply is inapposite. The court there considered whether the *EPA itself* could bring a misbranding action against a manufacturer under FIFRA without first canceling the existing registration. *Reckitt Benckiser*, 762 F. Supp. 2d at 41. Ultimately, the court concluded the EPA did not have the authority under FIFRA to pursue such an action in lieu of a cancellation proceeding because 7 U.S.C. § 136d "established a detailed, multi-step process that EPA *must* follow when it wants to cancel or suspend a registration." *Id.* at 42–43. The court concluded that to allow the EPA to bring a separate misbranding proceeding would render that section superfluous and allow the agency to avoid the cancellation process Congress had spelled out in the statute. *Id.* at 43. Here, plaintiff is a private citizen alleging failure to warn claims under state law rather than private action for misbranding under FIFRA.

> (2) The rule stated in Subsection (1) applies although
>
>> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Comment j provides that, "[i]n order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use." Restatement (Second) of Torts § 402A cmt. j. "This means that a plaintiff can bring failure-to-warn claims, but it doesn't mean that a plaintiff can bring *only* failure-to-warn claims." *Hardeman*, 2016 WL 1749680, at *3.[4] Indeed, that would run directly counter to § 402A, which states liability should be imposed for the sale of unreasonably dangerous products even when the seller has exercised all possible care, such as providing warnings of the product's danger. Comment j also says that "a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Restatement (Second) of Torts § 402A, cmt. j. The crux of plaintiff's claim in this case is that defendant failed to warn her about the carcinogenic effects of Roundup/glyphosate. Plaintiff may therefore also allege the product is in defective condition and/or unreasonably dangerous, and comment j presents no bar to such a claim.

In this regard, comment k states:

> There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. . . . Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. . . . The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and

---

[4] Defendant cites the decision in *Oakes v. E.I. Du Pont de Nemours & Co.*, 272 Cal. App. 2d 645 (1969) as applying comment j to a pesticide. That case is not persuasive authority with respect to the issue before this court. There, the California Court of Appeal merely held that the rule embodied in comment j did not require defendant to "warn the user of unknown and unknowable allergies, sensitivities and idiosyncracies [sic]," which would "recast the manufacturer in the role of an insurer." *Id.* at 650–51. This is simply not the nature of plaintiff's claim in this action.

>desirable product, attended with a known but apparently reasonable risk.

Restatement (Second) of Torts § 402.  "California courts have applied comment k to prescription drugs and medical devices only." *Giglio*, 2016 WL 1722859, at *4. *See also Hardeman*, 2016 WL 1749680, at *3 ("Monsanto does not cite—and the Court cannot find—a California case applying comment k outside the medical context, *accord Garrett v. Howmedica Osteonics Corp*., 214 Cal. App. 4th 173, 153 Cal.Rptr.3d 693, 700–01 (2013). On the contrary, California courts appear willing to apply comment k only where a product is 'available only through the services of a physician.'"). Defendant notes that decisions applying the law of other states have applied comment k outside the narrow areas to which California courts have limited it. (*See* Doc. No. 73-1 at 12–13, fns. 29–33.)  However, those decisions have no relevance here since it is California law that controls plaintiff's claims before this court.

**III.    Conclusion**

For all of the reasons set forth above, defendant's motion to dismiss (Doc. No. 73) is denied.

IT IS SO ORDERED.

Dated:   **July 7, 2016**                                    _____
UNITED STATES DISTRICT JUDGE